UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAREN G. DYDA,

        Plaintiff,

vs.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

Case No.: 00-CV-73922-DT

HON. DENISE PAGE HOOD
MAG. JUDGE WALLACE CAPEL, JR.

## REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

It is recommended that the Court grant in part and deny in part Plaintiff's Motion for

Summary Judgment, deny Defendant's Motion for Summary Judgment, and remand this case to the

Secretary for further proceedings.

### II.    BACKGROUND AND PROCEDURAL HISTORY

This is an action for judicial review of the Defendant's final decision denying Plaintiff's

application for disability insurance benefits ("DIB").[1] Plaintiff filed the application on October 21,

1996, alleging disability as of April 15, 1985 due to multiple sclerosis[2] ("MS"), loss of vision,

_____

[1]Plaintiff's insured status expired on March 31, 1991. (TR. 77-86).

[2]Multiple sclerosis is a disease of the brain and spinal cord. The spinal cord is the "cable" of
nerves in the spinal column. In this condition, various parts of the brain and spinal cord are subjected to a
type of deterioration called sclerosis. Sclerosis in this instance is a sort of hardening of the nerve tissue
and its displacement or replacement by overgrowing connective tissue. In other words, functional nerve
tissue gives way to supporting, nonfunctional tissue. The disease, which affects (continued ... )



asthma, seizures, and arthritis in the back, neck and left knee. (TR. 71-74, 87). The Social Security

Administration ("SSA") denied benefits initially and upon reconsideration. (TR. 31-33, 36-38). A

de novo hearing was held on October 21, 1998, before Administrative Law Judge ("ALJ") Kathleen

T. Donahue. (TR. 563-639). In a decision dated June 22, 1999, the ALJ found that Plaintiff's record

of treatment for MS and a visual disturbance failed to demonstrate the existence of a severe

impairment that lasted, or could be expected to last, for a continuous twelve month period prior to

March 31, 1991. (TR. 18-22). Accordingly, Plaintiff was found not disabled. The Appeals Council

denied review, and Plaintiff commenced this action for judicial review.

A.    Plaintiff's Testimony

Plaintiff was born on October 13, 1961, and was twenty-nine years old in March 1991. (TR.

576). She has been married eleven years, and has two children (one son, born in 1988, and one

daughter, born in 1990). (TR. 576-577, 603). She is a high school graduate. (TR. 578). At the time

of the hearing, she was 5'7" tall, and weighed 190 pounds. (TR. 577). Plaintiff testified that she

could not remember her weight prior to March 31, 1991; however, she described herself as "quite

heavy" during that time due to high dosages of the steroid medication, Prednisone. (TR. 578).

Plaintiff testified that she last worked as a cashier at a car dealership in 1997. (TR. 578-579).

She lasted only one month on the job. (TR. 579). She described the exertional requirements of the

job as "up and down[,]" however, there was no lifting involved; mainly, she would sit to process

paperwork and walk between the various departments of the dealership. Id. Between November

---

(... continued) chiefly young adults, is usually prolonged, with remissions and relapses extending over a
period of years, and is incurable. The symptoms are uncoordinated (awkward) movements, weakness,
jerking of the arms and legs, peculiar speech (mingled with pauses), states of pleasant hallucination, etc.
See J.E. Schmidt, M.D., 4 Attorneys' Dictionary of Medicine, M-295 (2001).

2

1979 and April 1980, Plaintiff worked as a nurse's assistant at both Applewood Nursing Home and Oakwood Hospital. (TR. 580). Both positions were basically the same; Plaintiff testified that she cared for the patients, i.e., "[b]athed them, fe[d] them, walked them," helped them get in and out of bed, etc. (TR. 579). She has held no other jobs. (TR. 581).

Plaintiff quit working due to her MS symptomology. Id. Specifically, she identified chronic fatigue, "numbness[,]" back pain and vision loss. (TR. 581, 603). Plaintiff testified that she was diagnosed with MS in 1983. Id. She was hospitalized for MS in 1983 and 1984. Id. She was unsure whether her MS was ever in remission, as she still had "flare[-]ups of numbness[.]" (TR. 606-607). Plaintiff testified that the optic neuritis in her left eye was at its worst between 1983 and 1984. (TR. 582). She testified that her left eye vision was a "blur[]" during that time, and that the optic neuritis "went" to her right eye. Id. Plaintiff testified that in 1990 or early 1991, she began treating with Drs. Ghaleb F. Hatem and Pedro Caing for loss of vision in both eyes due to optic neuritis. Id. She described her vision as "all fog." Id; *see also* (TR. 584-585, 587-588). She indicated that stress, anger, nervousness, excitement, etc., would exacerbate her condition. (TR. 586). Plaintiff testified that Dr. Caing prescribed Prednisone, which "over [] time[,] [] helped [to] restore" her vision. (TR. 583). Plaintiff estimated that, at the time, she was taking 80 m.g. of Prednisone per day. Id. She could not testify as to the exact year/month when her vision was functionally restored. (TR. 587, 605-606). She stated only that the optical neuritis was most severe in 1984, that her vision was restored, that she had severe vision problems again in 1991, and that her vision was restored. (TR. 603). Plaintiff testified that, despite the said improvement, she still has "scar tissue[]" and/or "scar floaties," which "move up and down," and detract from her vision. (TR. 586-587). She testified that Prednisone side-effects included an 80 pound weight gain, constant upset stomach, and Cushing's

3

syndrome[3] features such as thinning of the skin, and a "moon[-]face[d]" appearance. (TR. 602).

Plaintiff testified that while MS-related neurological symptoms began in 1983, she experienced "weakness all over[]" in 1991. (TR. 589). She cited MS and side-effects from the high dosage of Prednisone as the etiology. Id. Plaintiff testified that she was too weak and/or easily fatigued in 1991 to perform repetitive motor activities such as pushing/pulling with her extremities. Id. She stated that "every day living" during that time "wore [her] out." Id. She testified that her legs were very weak, and that her strength varied daily; however, Plaintiff could not estimate how far she could walk in 1991. (TR. 589-590). She described her gait during that time as "[u]nsteady." (TR. 591). She testified to "lean[ing] up against things" when she walked due to lower extremity "weakness." Id. Plaintiff also described her energy level in 1991 as "[v]ery low." (TR. 592). Her most comfortable position was "[l]ying down." Id. She testified that, prior to 1992, she spent "[m]ost of the day" recumbent. Id. Plaintiff stated that she would get up to "go to the bathroom[,]" or to "make [herself] [] lunch[,]" and would lie back down again. Id. Plaintiff testified that she could not stand, walk or sit for eight hours without lying down. (TR. 592-593). She also testified that her exertional capacity to perform same would be further reduced by job related stressors, such as supervisor/employee interaction, deadlines, etc. (TR. 593).

Plaintiff testified that she has treated with Timothy Robinson, a chiropractor, due to scoliosis and pinched nerves in her lower back since 1983. (TR. 595). She stated that because her lower back

---

[3]Cushing's syndrome is a disorder caused by excessive secretion of cortisol and other adrenocorticol hormones. Symptoms include electrolyte imbalance, muscle weakness, osteoporosis, proneness to infection, weakness of the skin, and "moon face" (deposit of fat on the face). Symptoms vary in severity, and all of the symptoms may not be present in every individual. *See* 2 Attorneys' Dictionary of Medicine, at C-525.

muscles are weak, she has difficulty sitting for extended periods of time. Id. Plaintiff was unsure whether her back ailments were related to MS. Id. She could not estimate how long she could sit prior to 1992; she testified only that she had back pain since 1983. (TR. 596-597). As to her daily activities, Plaintiff testified that she would shower in the morning, have breakfast, lie down, listen to the radio, watch television, prepare a microwaved lunch, "maybe" talk on the phone, and occasionally visit when her sister would come over; she reiterated that, otherwise, she would lie down during the day. (TR. 599-601). She had no hobbies or social activities. Id. Prior to 1992, she also engaged in no "real[]" housework, she rarely did laundry due to back pain, and cleaning consisted of "pick[ing] something off the floor." (TR. 599).

## B.    Medical Evidence

Examination of the parties' Briefs reveals that an additional recitation of the Plaintiff's medical evidence is unnecessary. The pertinent medical evidence relied upon by this Court is articulated in the Analysis.[4]

## C.    Medical Expert's Testimony

Foster K. Redding, a neurologist, attended the hearing and testified as a medical expert ("ME"). *See* (TR. 607-635). Dr. Redding testified that Plaintiff's record demonstrated at least four medically determinable impairments: MS, seizures/generalized epilepsy, low back strain due to spondylosis and/or arthritis, and rheumatoid arthritis. (TR. 612-613).

As to Plaintiff's seizures, Dr. Redding stated that the record of treatment/severity was unclear, and that it appeared she had been taking medication for seizures since 1983 or 1984. (TR.

---

[4]*See* Section F, infra.

615).   Without further explanation, he nonetheless opined that Plaintiff's seizures were "well controlled by medication for the most part." (TR. 612-613).   As to Plaintiff's back strain/arthritis, Dr. Redding merely testified that a positive rheumatoid arthritis test in 1990 would be less significant if subsequent testing in 1992 and 1993 was negative. *See* (TR. 613-614).

As to Plaintiff's MS, Dr. Redding testified that the record reveals three periods of significant "illness[:]" first, in 1983, when Plaintiff was hospitalized and evaluated for MS; second, in 1984, when Plaintiff was hospitalized and had widespread neurological problems throughout her body; and lastly, in 1991, when Plaintiff experienced a significant deterioration of her vision. (TR. 615-616). He testified that while Plaintiff's visual impairment was sufficiently severe to meet the Agency's Listing for visual acuity loss between February 28 and March 28, 1991, "the rest of [her] symptoms were relatively much less important." (TR. 616-619).   Dr. Redding testified that Plaintiff's record treatment for MS contained few references to clinical data other than her record of visual deterioration in 1991. (TR. 617).   Specifically, he opined that the record insufficiently detailed the treating physicians' abnormal neurological findings prior to 1991; he also opined that subsequent to 1991 the record adequately documented Plaintiff's vision loss, but contained "only [indications of] minor [neurological] symptoms[]" ... with few indications of extremity weakness or lack of coordination, etc. Id.   Further, Dr. Redding testified that he afforded little weight to the sworn statement taken from Plaintiff's internist, Pedro Caing, in September 1997 because "[the statement expounded upon the record clinical data] after[-]the[-]fact, ... in retrospect, by memory, and ... under [an] interview situation." (TR. 630).   Accordingly, Dr. Redding testified that "on the basis of the medical record[], there w[ere] no other descriptions or doctors' reports that [showed Plaintiff satisfied] any of the [Agency's] other listings[]" of impairments for *per se* disability. (TR. 620).

6

## D.     Vocational Expert's Testimony

The ALJ's Step Two[5] decision rendered vocational testimony unnecessary.

## E.     ALJ's Conclusions

After reviewing the testimony presented at the hearing and the medical evidence in the record, the ALJ concluded that Plaintiff did not have an impairment or grouping of impairments which significantly limited her ability to perform basic work-related activities for twelve continuous months between April 15, 1985 and March 31, 1991. (TR. 19-22). In so doing, the ALJ determined that Plaintiff's testimony was only "somewhat credible[]"; specifically, the ALJ found only that her testimony was "vague[]" as to the "nature and extent of her impairments on and before March 31, 1991." (TR. 21).

## F.     Analysis

The Plaintiff's Motion for Summary Judgment contends that the ALJ's Step Two determination is not supported by substantial record evidence.  The Defendant's Motion for Summary Judgment contends that the ALJ's Step Two decision is supported by substantial record evidence.  This matter is now ready for decision.

This Court's review of the ALJ's conclusions is limited. The findings of the ALJ regarding Plaintiff's disabled status are conclusive if supported by substantial evidence based on the record as

---

[5]The regulations provide for a five-step sequential evaluation of disability claims. 20 C.F.R. § 404.1520 (2001).  Using sequential evaluation, if the Secretary can make a dispositive finding at any point in the process, there is not review further. 20 C.F.R. § 404.1520(a).  The five issues are as follows:(1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment expected to result in death or last for twelve months continuous time; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents or prevented the claimant from performing past relevant work; and (5) whether the impairment prevented the claimant from doing any other work. Id.  The burden of proof is on the claimant throughout the first four steps of the sequential process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987).

a whole. 42 U.S.C. § 405(g)(1997). Substantial evidence means such evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971); Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997). It is more than a scintilla of evidence but less than a preponderance of evidence. Brainerd v. Secretary of Health & Human Servs., 889 F.2d 679, 681 (6th Cir. 1989)(citing Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217 (1938)). This standard presupposes that there is a "zone of choice" within which the ALJ may make a decision without being reversed. Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994). Even if the court might arrive at a different conclusion, an administrative decision must be affirmed if supported by substantial evidence. Walters, 127 F.3d at 528; Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)(quoting Baker v. Heckler, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In this case, Plaintiff argues that the ALJ's denial of her application for benefits at Step Two was tainted by a variety of legal errors. First, Plaintiff alleges that the ALJ's decision focused on the record of her MS and visual disturbance, but omitted discussion of the record of her obesity, back condition, chronic fatigue, and seizure disorder. Second, Plaintiff argues that the ALJ's decision failed to acknowledge the sworn statement of her treating internist, Pedro Caing, taken on September 11, 1997. Third, Plaintiff argues that the ALJ's decision failed to acknowledge the letter of her treating ophthalmologist, G.F. Hatem, on May 25, 1998. Fourth, Plaintiff contends that the ALJ's decision's emphasis on the durational requirement ran afoul of Sixth Circuit case law regarding episodic impairments such as MS. Fifth, Plaintiff contends that the ALJ failed to adequately consider the side-effects of her medications/steroids. Finally, Plaintiff alleges that the ALJ's decision improperly discounted her testimony of functional limitations.

I conclude that the ALJ's Step Two decision is not supported by substantial record evidence due to the ALJ's failure to evaluate the entire medical record as to all of the Plaintiff's claimed impairments. Accordingly, I proceed to articulate the critical deficiencies below.

To establish "disability" under the Act, the claimant must show that he is suffering from a medically determinable impairment which can be expected to last for at least twelve months. 42 U.S.C. § 1382c(a)(3)(A). In addition, the claimant can be considered disabled "only if his physical ... impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work ... ." 42 U.S.C. § 1382c(a)(3)(B).

Within this statutory framework, the ALJ's decision precluded further consideration of Plaintiff's application based on the finding that her MS was in remission and her record of visual disturbances did not meet the twelve month durational requirement prior to March 31, 1991. Accordingly, the ALJ concluded that Plaintiff was not disabled at Step Two of the Agency's sequential disability evaluation procedure, which is codified at 20 C.F.R. § 404.1520.

Under Step Two of the SSA's sequential analysis, the ALJ must determine whether the claimant's impairments meet the twelve month duration requirement and whether the claimant's impairments are "severe." 20 C.F.R. §§ 404.1520(a), (c). First, a claimant will not meet the twelve month test "[i]f one or more of [his] impairments improves or is expected to improve within 12 months, so that the combined effect of [the claimant's] remaining impairments is no longer severe[.]" 20 C.F.R. § 404.1522(b). In addition, a claimant cannot satisfy the durational requirement by aggregating unrelated severe impairments that, individually, last for less than twelve months. 20 C.F.R. § 404.1522(a). Second, an impairment is considered to be "severe[,]" if it "significantly

9

limits [the claimant's] physical or mental ability to do basic work activities[,]" such as sitting, standing, walking, lifting, carrying, etc. 20 C.F.R. §§ 404.1520(c), 1521(b). In this Circuit, the severity requirement is more lenient: the claimant is required to make only a *de minimus* threshold showing, such that "an impairment can be considered [to be] not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." Higgs v. Bowen, 880 F.2d. 860, 862 (6th Cir. 1988)(recognizing that the Agency's Step Two evaluation is used for "administrative convenience" to weed out claims that are "'totally groundless' solely from a medical standpoint.")(citation omitted). Finally, in determining whether a claimant's impairments are of sufficient medical severity, the ALJ must consider the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. 20 C.F.R. § 404.1523.

Here, the ALJ's decision addressed solely Plaintiff's MS and vision loss. This was apparently based on the ALJ's belief that Plaintiff "assert[ed] that she was disabled due to [MS] and a visual disturbance." *See* (TR. 19). The record, however, does not reveal that the medical basis of Plaintiff's application for benefits, albeit ambiguous at times, was so restricted; in other words, there is no showing that Plaintiff sought disability solely based upon MS and MS-induced vision restrictions.

For instance, when Plaintiff's application was denied by the SSA initially and upon reconsideration on January 24 and May 22, 1997, the "Notice of Disapproved Claim" forms indicated that Plaintiff claimed an inability to work due to MS, seizures, scoliosis, vision, asthma, chronic fatigue, and arthritis in the back, neck, and knees. *See* (TR. 33, 38). These findings correspond with Plaintiff's earlier, handwritten responses to the SSA's Disability Report and

10

Reconsideration Disability Report. *See* (TR. 87-93, 103-105). All three of the SSA's consultive, pre-hearing, record evaluations, specifically, the January 2, 1997 "Report of Contact" and the January 2 and April 30, 1997 "DDS Consultation" summaries, addressed Plaintiff's claims of MS, vision loss, chronic fatigue, asthma, seizures, and arthritis of the back, neck and knees. *See* (TR. 101-102, 314-316). Plaintiff testified at the hearing regarding functional limitations primarily associated with MS (including vision loss, muscle weakness, numbness of the extremities and coordination), chronic fatigue and back pain. *See* (TR. 576-607). The ME testified that Plaintiff's record revealed at least four impairments that were "plausable[]" and "supported" by the medical evidence: MS, seizures, low back strain (possibly due to scoliosis and/or arthritis), and rheumatoid arthritis. (TR. 612). Lastly, Plaintiff's counsel's pre-decision, post-hearing letter of July 24, 1998 shows only that MS and vision loss were focused on to address the ALJ's stated concerns regarding duration and severity at the June 1999 hearing.[6] *See* (TR. 576-607).

Nevertheless, despite all of these claimed impairments, ALJ Donahue's written opinion addresses only one aspect of Plaintiff's MS. Specifically, the ALJ's analysis was premised on the

---

[6]Perhaps most importantly, I note that the Defendant's Motion concedes that the Plaintiff's DIB application was not premised solely upon MS and MS-related vision problems. Specifically, Defendant's Motion states that "Plaintiff filed an application for DIB ... alleging that she became disabled on April 15, 1985 ... due to symptoms associated with [MS], as well as seizures, scoliosis, loss of vision, asthma, and arthritis in the back, neck, and left knee." *See* Defendant's Bf. in Supp. of Mtn. for S.J. p. 2. Defendant's Brief also concedes that the ALJ acknowledged only Plaintiff's MS and MS-related visual impairments; however, in so doing, Defendant proceeds to argue that the ALJ's failure to address/evaluate the totality of Plaintiff's impairments is excused because "[she] does not explain how [the remaining claimed impairments] limited her ability to work[.]" *See* Plaintiff's Bf. in Supp. of Mtn. for S.J. p. 12. This argument is meritless. The record between 1985 and 1991 reveals that Plaintiff's MS-related vision problems were not the only impairment that would have affected her ability to walk, sit, stand, carry, lift, push, pull, stoop, squat, bend, etc. Nonetheless, the ALJ's duty to evaluate the medical record, resolve conflicts, and articulate factual findings is not contingent upon whether or not the claimant satisfied the *de minimus* burden of proof at Step Two. If it were, a reviewing court would always be required to intuit the ALJ's rationale.

assumption that "[t]he [] evidence reveals that [Plaintiff] has a history of [MS] which manifests as episodic visual disturbances[] diagnosed as optic atrophy[.]" *See* Id. Yet, within this unexplainedly restrictive record evaluation, the ALJ's decision did not articulate the basis for her belief that Plaintiff's MS symptomology was limited to visual disturbances. In other words, the ALJ's analysis omitted consideration of all of the other MS-related symptomology, i.e., neurological deficits, chronic fatigue, back pain/weakness, etc., and evaluated the severity and duration of Plaintiff's MS based on the records of her visual acuity.

In so doing, the ALJ's analysis stated only that the "[o]ffice records of [Dr. Hatem] [] on February 15, 1991, [indicated] that the [Plaintiff] had not [been treated] for 'a long time', [and] that the optic neuritis ha[d] started again." *See* (TR. 20). The ALJ detailed Dr. Hatem's record of Plaintiff's vision improvement between late February and mid-April 1991; in fact, the selected excerpts of Dr. Hatem's letters comprised the only record medical findings articulated by the ALJ. *See* Id. The remainder of the ALJ's analysis consisted of three summary findings : first, she stated that "Dr. Redding [the ME] found that [Plaintiff's] [MS] did not meet the Listing and that the medical records indicated that the [MS] was in remission[]"; second, she stated that Plaintiff's subjective symptomology had been considered in accord with the evaluative areas listed in 20 C.F.R. § 404.1529 and Social Security Ruling ("SSR") 96-7p; and, third, she stated that Plaintiff's testimony "was somewhat credible, but vague[,]" due to her inability to "supply [residual functional capacity] information for [the time period] on and before March 31, 1991." *See* (TR. 20-21). As a result, ALJ Donahue concluded at Step Two that "[t]he medical evidence [between April 1985 and March 1991] reveals that [Plaintiff's] [MS] was in remission and that the visual disturbance was only a short-term, temporary condition." *See* (TR. 19).

12

Based on the above, the ALJ's Step Two finding is not supported by substantial record evidence. First, because the ALJ's opinion addressed only MS, there is absolutely no showing that the ALJ considered whether Plaintiff's seizures, back condition, neck condition, knee condition and arthritis lasted for a continuous period of twelve months and whether, individually or in combination, they were "severe" under the Sixth Circuit's holding in Higgs. Second, the ALJ's opinion sufficiently evaluated the medical record only as to Plaintiff's MS-related vision problems in 1991.[7] Third, as to Plaintiff's MS in general, the ALJ's opinion merely summarized the ME's testimony in a single sentence indicating remission. This is problematic where the ALJ did not reconcile the sworn statements of treating internist, Dr. Caing, who testified that Plaintiff was disabled based on the interrelationship of her MS symptomology of back pain, back spasms, motor weakness, extremity numbness, fatigue, obesity, seizures and medication side-effects such as Cushing's syndrome.[8] *See* (TR. 335-364). As described above, these are areas that, while summarily addressed in parts, were largely, if not completely, omitted from discussion in the ALJ's opinion. Lastly, the ALJ failed to articulate the evidence she relied upon in determining the credibility of Plaintiff's

---

[7] I note that the ALJ's opinion did not address the May 25, 1998 letter of Dr. Hatem's disability conclusions; nonetheless, her decision did contain sufficient objective documentation to discount Dr. Hatem's disability conclusions solely as to Plaintiff's vision in 1991. *See* (TR. 20, 185-208, 523).

[8] I note that the ALJ's decision only references Dr. Caing's sworn statement by citing its record exhibit number; she did so presumably to indicate the basis of the ME's belief that Plaintiff's MS was in remission until 1990. *See* (TR. 20). The problem is that while Dr. Caing testified that Plaintiff's MS was in remission in 1990, he did not testify that Plaintiff's MS remission was symptom-free prior to 1990, which the ALJ infers in the absence of any discussion of the medical record prior to 1990. *See e.g.,* (TR. 353-355). This is the basis of Plaintiff's argument that the ALJ's Step Two decision ran afoul of the Sixth Circuit case law regarding episodic and/or progressive impairments (such as MS) at Step Two. *See* Plaintiff's Bf. in Supp. of Mtn. for S.J. p. 15-17; *see also* Plaintiff's Reply Bf. p. 1-4. I need not advance to address this question, however, based on the conclusion that the ALJ failed to meaningfully evaluate the record evidence between 1985 and 1991 as to *all* of the Plaintiff's claimed impairments.

13

subjective complaints. In evaluating Plaintiff's symptomology, the ALJ merely referenced SSR 96-7p and 20 C.F.R. § 404.1529 and concluded that Plaintiff's testimony was not credible, without discussing any of the specific evidence and how it related to those factors.

As a result, it appears that Plaintiff's complaints of MS, vision loss, back pain, seizures, arthritis, scoliosis, vision, asthma, chronic fatigue, and arthritis in the back, neck, and knees etc., would affect her ability to perform basic work activities between 1985 and 1991. Under Sixth Circuit case law, if Plaintiff's medical record shows that any combination of the claimed impairments, when considering those that are severe and non-severe together, interfered with her ability to perform basic work activities over a continuous period of twelve months, she has satisfied the *de minimus* burden of proof at Step Two. *See* Higgs, 880 F.2d at 862-863. Aside from Plaintiff's MS-induced vision problems in 1991, the ALJ here neither determined clearly the duration of Plaintiff's claimed impairments, nor considered the effect and interrelationship of Plaintiff's claimed impairments. The ALJ has a duty to evaluate the record to determine the existence of medically-determinable impairments and to articulate whether Plaintiff has satisfied the burden of proof as to all of the claimed impairments. Hurst v. Sec. of Health & Humans Servs., 753 F.2d 517, 519 (6th Cir. 1981)(recognizing that the ALJ's duty to provide a minimal level of articulation is "absolutely essential" to meaningful appellate review)(citations omitted); Zblewski v. Schweiker, 732 F.2d 75, 78 (7th Cir. 1983)(emphasizing that "when the ALJ fails to mention rejected evidence, 'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'")(citing Cotter v. Harris, 642 F.2d 700, 705 (3rd Cir. 1981)). While the record evidence may ultimately support a nondisability conclusion, it is not the function of the court to make the critical decisions necessary to resolve a case, which would usurp the administrative fact-finding

14

function under the guise of appellate review. Cutlip v. Sec. of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)("This court does not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility.")(citations omitted). The ALJ's failure to minimally articulate a rationale reconciling her findings and conclusions leaves the court without a basis to perform a meaningful review of all the Plaintiff's claimed impairments at Step Two. Hence, the court is unable to affirm the ALJ's Step Two nondisability conclusion, and remand is necessary for further explanation and/or articulation on these points.

## III.   CONCLUSION

For the reasons stated, I find that the ALJ's Step Two decision is not supported by substantial record evidence. Accordingly, I respectfully recommend that the court **DENY** Defendant's Motion for Summary Judgment, **GRANT** Plaintiff's Motion for Summary Judgment **IN PART**, and **REMAND** this case to the Secretary for a Step Two evaluation of *all* the claimed impairments between April 15, 1985 and March 31, 1991.

Pursuant to Fed.R.Civ.P. 72(b) and 28 U.S.C. § 636(b)(1), the parties are hereby notified that they may serve and file specific, written objections within ten days after being served with a copy of this report and recommendation. The parties are further informed that failure to timely file objections may constitute a waiver of any further right of appeal to the United States Court of Appeals. United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

In accordance with the provisions of Fed.R.Civ.P. 6(b), the court in its discretion, may

enlarge the period of time in which to file objections to this report.


WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE

Dated: __MAY 0 8 2002__

16

## CERTIFICATION OF SERVICE

**UNITED STATES OF AMERICA  )**

                                **) ss   CASE NO.: 00-CV-73922-DT**

**EASTERN DISTRICT OF MICHIGAN    )**

I, the undersigned, hereby certify that I have on the 8th day of May 2002, mailed

copies of the "Report and Recommendation," in the foregoing cause, pursuant to Rule

77(Davenport), Fed.R.Civ.P., to the following parties:

Honorable Denise Page Hood
United States District Judge
231 W. Lafayette, Room 251
Detroit, Michigan 48226

Evan A. Zagoria
6785 Telegraph Road
Suite 400
Bloomfield Hills, Michigan 48301

William L. Woodard
United States Attorney's Office
211 W. Fort St., Suite 2001
Detroit, Michigan 48226-3211

Marsha Heinonen
Deputy Clerk